**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| CASINO BEACH PIER LLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 20-10163 (FLW) (TJB) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WESTCHESTER SURPLUS LINES | : | |
| INSURANCE COMPANY and | : | |
| AXIS SURPLUS INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, Chief Judge:**

This matter comes before the Court on a Motion to Remand filed by Plaintiff Casino Beach Pier LLC ("Plaintiff" or "CBP"). On July 9, 2020, Plaintiff initiated this insurance coverage action in the Superior Court of New Jersey, Law Division, Ocean County, seeking a declaratory judgment that, *inter alia*, Defendants Westchester Surplus Lines Insurance Company ("Westchester") and Axis Surplus Insurance Company ("Axis") (collectively, "Defendants") are obligated to provide business interruption coverage resulting from the Executive Orders by the Governor of the State of New Jersey that limited the operation of nonessential businesses in response to the 2019 novel coronavirus ("COVID-19") pandemic. On August 7, 2020, Axis removed the matter to this Court, with the consent of Westchester, based on the diversity of the parties. Plaintiff now moves to remand the matter to state court. For the reasons set forth below, Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

Plaintiff owns and operates various boardwalk and amusement attractions in Seaside

Heights, New Jersey.  Defendants are insurance companies that sold Plaintiff commercial insurance policies.  Specifically, Westchester sold Plaintiff commercial property primary policies for the policy periods of March 19, 2019 to March 19, 2020, and March 19, 2020 to March 19, 2021.  (Compl. ¶¶ 23, 25.)  Both Westchester policies have a $5 million limit of liability, which is part of a $10 million limit shared with Axis.  (*Id.*)  Axis sold Plaintiff commercial inland marine primary policies for the same relevant policy periods with $5 million limits of liability.  (*Id.* ¶¶ 24, 26.)  The policies sold to Plaintiff are "all risk" insurance policies that provide that "[t]his Policy insures against all risks of direct physical loss or damage to Insured Property, except as included." (*Id.* ¶ 27.)  The policies provide insurance coverage for damage to property owned, used, leased, or intended for use by Plaintiff, as well as for business interruption losses "sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to any Property." (*Id.* ¶ 28.)  Relevant here, the Policies include coverage for business interruption caused by civil authority and do not exclude coverage for the risks or perils of viruses or communicable diseases. (*Id.* ¶¶ 29–34.)

On March 9, 2020, New Jersey Governor Philip D. Murphy declared a State of Emergency and a Public Health Emergency in the State of New Jersey.  (*Id.* ¶ 53.)  On March 16, 2020, Governor Murphy issued Executive Order No. 104, which limited gatherings of persons in the state to 50 persons or less, ordered the closure of schools, and directed that certain facilities, including casinos, gyms, and entertainment centers be closed to the public.  (*Id.* ¶ 55.)  Executive Order No. 104 additionally restricted the service capabilities and hours of operation of non-essential retail, recreational, and entertainment businesses; and required that all restaurants and dining establishments limit their food services to delivery and takeout.  (*Id.* ¶ 56.)  Thereafter, on March 21, 2020, Governor Murphy issued Executive Order No. 107, which ordered the closure of

2

all New Jersey essential businesses, including recreational and entertainment centers and places of public amusement.  (*Id.* ¶¶ 59–60.)  On May 18, 2020, Governor Murphy issued Executive Order No. 147, which extended the closure of amusement parks, arcades, and other places of public amusement, despite the authorized reopening of beaches and boardwalks.  (*Id.* ¶ 62.)

As a result of the Executive Orders, Plaintiff closed its businesses on March 15, 2020.  (*Id.* ¶ 67.)  Plaintiff estimates that its sustained business interruption losses since March 2020 are in excess of $4 million.  In May 2020, Plaintiff, through its insurance broker, provided notice to Defendants that Plaintiff was submitting a claim in connection with its losses stemming from the COVID-19 pandemic, and requested an advance payment (the "Claim").  (*Id.* ¶ 78.)  Defendants refused to make any payment to Plaintiff under the Policies for these losses.  (*Id.* ¶ 79.)

On July 9, 2020, Plaintiff initiated a civil action in the Superior Court of New Jersey, Law Division, Ocean County, against Defendants, seeking a declaration that Plaintiff is entitled to coverage under the Policies for the losses suffered as a result of the COVID-19 pandemic and the relevant Executive Orders, limiting the operation of its businesses.  (*Id.* ¶¶ 85–90.)  On August 7, 2020, Axis filed a Notice of Removal, with the consent of Westchester, and removed the action to federal court based on the diversity of the parties.  (ECF No. 1.)  On September 4, 2020, Plaintiff filed the instant motion to remand, urging this Court to decline to exercise its jurisdiction to hear this declaratory action under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202.[1]

---

[1]      Plaintiff contends, in a footnote, that Axis, the removing party, has not met its burden of proving complete diversity as it does not allege in its Notice of Removal the citizenship of Plaintiff's member.  As a limited liability corporation, Plaintiff's citizenship for the purpose of diversity is based on the citizenship of its members.  *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).  Plaintiff, however, in its briefing acknowledges that this Court does have diversity jurisdiction over this matter.  (*See* Moving Br., at 17–18.)  Further, in response, Axis attaches to its opposition documents that demonstrate that Plaintiff's members are New Jersey citizens.  I am, therefore, satisfied that this matter was properly removed pursuant to 28 U.S.C. § 1332(a) based on the diversity of the parties.

Defendants oppose remand.

## II.   <u>STANDARD OF REVIEW</u>

Removal of a suit from state to federal court is proper only if the federal court to which the action is removed would have had original jurisdiction over the matter. *Entrekin v. Fisher Scientific, Inc.*, 146 F. Supp. 2d 594, 603–04 (D.N.J. 2001) (citing 28 U.S.C. § 1441(a)–(b)). Indeed, the statute provides in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Remand is governed by 28 U.S.C. § 1447(c), which provides that a

> motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days of the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). Importantly, "[w]hen the propriety of the removal is challenged, the burden is on the defendant to show that removal is proper, and the Court is obligated to 'strictly construe the removal statutes against removal, and resolve any doubts in favor of remand.'" *Hackensack Univ. Med. Ctr. v. Lagno*, No. 06-687, 2006 WL 3246582, at *2 (D.N.J. Nov. 3, 2006) (quotation omitted).

## III.   <u>DISCUSSION</u>

### A.  Applicability of the DJA

Under the DJA, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The permissive

4

language of the DJA "confer[s] on federal courts unique and substantial discretion in deciding whether [in the first instance] to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  In other words, 'district courts are authorized, 'in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.'" *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (alteration in original) (quoting *Wilton*, 515 U.S. at 286).  Nevertheless, "[a] federal district court's discretion to decline jurisdiction depends on whether the complaint seeks legal or declaratory relief." *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017).  In that connection, when an action contains independent legal claims, "federal courts have a virtually unflagging obligation' to exercise jurisdiction." *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  When, however, an action seeks only declaratory relief, without independent legal claims, courts may decline jurisdiction if appropriate.  *Id.*

Here, the Complaint purports to only seek declaratory relief, namely a declaration of the parties' rights and obligations under the Policies.  Westchester, however, contends that "Plaintiff's characterization of this case solely as a declaratory judgment action is misleading, as this suit is a breach of contract claim disguised as a declaratory action." (Westchester Opp. Br., at 5.)  In that connection, Westchester urges this Court to characterize Plaintiff's claims as legal in nature.  (*Id.* at 5–8.)  The Third Circuit has observed that "[i]t may, in some circumstances, be possible for a party's claim for legal relief to masquerade as a declaratory judgment, improperly activating discretionary jurisdiction." *Reifer*, 751 F.3d at 137.  However, I do not find that such circumstances are present here.  The primary question presented by the Complaint is one of insurance coverage, not breach of contract.  While Westchester highlights Plaintiff's allegations with respect to Defendants' failure to make payment as allegedly required under the Policies, (*see*

5

Westchester Opp. Br., at 6–7), the declaration sought by Plaintiff is broader than simply stating that Defendants denial of Plaintiff's claim was improper. Rather, Plaintiff seeks a declaration that Defendants are obligated to provide coverage for all losses stemming from the COVID-19 pandemic, which is still ongoing. (*See* Compl. ¶ 77.) That Plaintiff seeks a "declaratory judgment which would necessarily implicate payment by an insurer if the court finds that liability exists, does not automatically convert [it] to a legal claim." *See Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, 479 F. Supp. 3d 143, 148 (E.D. Pa. 2020) (citing *Reifer*, 751 F.3d at 136). Moreover, that Plaintiff could have, but chose not to, plead a breach of contract claim does not change the court's analysis. *See Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, No. 20-787, 2020 WL 5051459, at *3 (W.D. Pa. Aug. 27, 2020). The DJA plainly provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief could be sought*." 28 U.S.C. § 2201(a); *see also Reifer*, 751 F.3d at 137. Accordingly, I decline to find that Plaintiff's claims are legal in nature and, thus, the Complaint is subject to discretionary jurisdiction under the DJA.[2]

### B. Parallel State Proceeding

Next, in considering whether to exercise jurisdiction over a declaratory action, the Court "determine whether there is a 'parallel state proceeding,'" as "the absence of a pending parallel state proceeding[ ] militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Kelly v. Macum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 143–144). The Supreme Court has defined a parallel state

---

[2]     I further note that other courts in this Circuit have rejected Westchester's argument and have determined that an action seeking a declaration of coverage under an insurance policy is declaratory in nature. *See, e.g.*, *Dianoia's Eatery, LLC*, 2020 WL 5051459, at *3; *Greg Prosmushkin, P.C.*, 479 F. Supp. 3d at 148.

proceeding in this context as "another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).  In other words, a parallel state proceeding "is a pending matter 'involving the same parties and presenting [the] opportunity for ventilation of the same state law issues.'"  *Kelly*, 868 F.3d at. at 284 (alteration in original) (quoting *Wilton*, 515 U.S. at 283).  The Third Circuit has instructed that "the mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather, there must be a substantial similarity in issues and parties between contemporaneously pending proceedings."  *Id.* at 283–84.  In that regard, "parallel proceedings are those that are 'truly duplicative,' that is, when the parties and the claims are 'identical,' or at least 'effectively the same.'"  *Id.* at 285 (citation omitted).  Relevant factors to consider in determining whether there is a parallel state proceeding "include the scope of the state court proceeding, the claims and defenses asserted, and whether necessary parties had been or could be joined."  *Id.* at 284.

Plaintiff contends that a parallel proceeding is currently pending in New Jersey State Court. Specifically, Plaintiff points to *Jenkinson's South, Inc. v. Westchester Surplus Lines Insurance Company* (the "Jenkinson's Action"), an insurance coverage action filed by two companies related to Plaintiff against the same Defendants as here in the Superior Court of New Jersey.[3]  The plaintiffs in the Jenkinson's Action ("the Jenkinson's Plaintiffs") share common owners with Plaintiff and also operate New Jersey boardwalk and amusement venues.  (Insua Cert. ¶¶ 5–6.) According to Plaintiff, the Jenkinson's Plaintiffs purchased "identical" policies from Defendants as those sold to Plaintiff and have incurred similar COVID-19-related losses for which they were denied coverage by Defendants.  (*Id.* ¶¶ 7–9.)  The Jenkinson's Action also includes excess

---

[3]      Plaintiff and the Jenkinson's Plaintiffs are represented by the same counsel.

insurers as additional defendants because the Jenkinson's Plaintiffs have sustained losses in excess of their primary policy limits.  (*Id.* ¶ 10.)  Defendants, however, both argue that the Jenkinson's Action is not a parallel proceeding because it involves different parties and, while the general coverage issues are similar, they involve different alleged losses and different facts.

I do not find that the Jenkinson's Action is a parallel proceeding.  Plaintiff is not a party to the Jenkinson's Proceeding and the question of whether Defendants are obligated to provide coverage to Plaintiff, here, is distinct from the question of whether Defendants are obligated to provide coverage to the Jenkinson's Plaintiffs.  Additionally, Plaintiff, in its reply, further contends that prior to 2014, the year that Superstorm Sandy hit New Jersey, Plaintiff and the Jenkinson's Plaintiffs were covered under the same insurance policies.  Because of the severe damage suffered by Plaintiff in that storm, Plaintiff and the Jenkinson's Plaintiffs obtained separate policies to control premium costs.  (*See* Capell Decl. ¶¶ 2–5.)  However, Plaintiff asserts, "it was always the intent of the Jenkinson's and CBP resort owners and their insurance companies to issue identical policies to Jenkinson's and CBP using the same base manuscript form and have a unified insurance program for them."  (*Id.* ¶ 6.)  That Plaintiff and the Jenkinson's Plaintiffs formerly obtained insurance coverage jointly does not alter Court's analysis of whether the Jenkinson's Action constitutes a parallel state court proceeding.  Plaintiff and the Jenkinson's Plaintiffs are now covered under separate insurance policies and, thus, the determination of coverage under one policy does not necessarily guarantee coverage under the other policy.  Indeed, if that were the case, Plaintiff and the Jenkinson's Plaintiffs could have filed suit together.[4]  Tellingly, they did not

---

[4]     Westchester contends that the certification filed by Plaintiff pursuant to New Jersey Court Rule 4:5-1, which states that "the matter in controversy is not the subject of any other action pending in any other court," militates against a finding that the Jenkinson's Action is a parallel state proceeding.  (Westchester Opp., at 4.)  That certification, however, bears no weight on the Court's analysis here.  Rather, as Plaintiff highlights, the Rule 4:5-1 certification is a mechanism

8

do so.  That is because resolution of the coverage disputes requires consideration of the specific language of each policy and the facts underlying the alleged losses.[5]

Moreover, while "[s]trict identity between parties and claims is not necessary for pending proceedings to be substantially similar," *Kelly*, 868 F.3d at 284 n.8; the shared ownership of Plaintiff and the Jenkinson's Plaintiffs is insufficient to render the Jenkinson's Action a parallel state proceeding.  As the *Kelly* Court explained, "'substantial similarity' only means that the parties involved are closely related and that the resolution of an issue will necessarily settle the matter in the other."  *Id.*  Here, as previously explained, the resolution of the coverage questions in the Jenkinson's Action will not settle the question of Plaintiff's coverage under the Policies in this case.  In that regard, the mere fact that Plaintiff and the Jenkinson's Plaintiffs are related entities cannot, by itself, transform the Jenkinson's Action into a parallel state court proceeding.

### C. The *Reifer* Factors

I must next weigh the *Reifer* factors.  While "the absence of pending parallel state court proceedings militates significantly in favor of exercising jurisdiction . . . , it alone does not require such an exercise." *Reifer*, 751 F.3d at 144.  Rather, where there is no parallel state proceeding, a district court declining jurisdiction under the DJA must "be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors."  *Id.*  The Third

---

for the New Jersey Superior Court to anticipate whether a Plaintiff will be adding additional parties to an action or whether non-related parties may be intervening in an action.  *See Ctr. for Prof. Advancement v. Mazzie*, 347 F. Supp. 2d 150, 155–56 (D.N.J. 2004) (observing that the purpose of Rule 4:5-1 "was to provide notice of [an] action to transactionally related non-parties, thus affording them an opportunity to intervene or otherwise guard their interests").

[5]     Indeed, Plaintiff presents no case in which a court found that a separate insurance coverage proceeding was a parallel state proceeding.  Rather, Plaintiff relies on cases in which the underlying tort action and insurance coverage declaratory judgment action were parallel proceedings.  *See, e.g.*, *Owen v. Hartford Ins. Co.*, No. 14-924, 2014 WL 2737842 (D.N.J. June 17, 2014).

Circuit has promulgated the following, non-exhaustive list of factors to guide that analysis:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as failing within the scope of a policy exclusion.

*Id.* at 146; *see also Kelly*, 868 F.3d at 282–83.  The Third Circuit has instructed district courts to give "meaningful consideration" to any relevant factors, and that some factors may be weighed heavier than others based on the circumstances of each case.  *Reifer*, 751 F.3d at 146.  The circuit court has also advised that "there will be situations in which district courts must consult and address other relevant law or considerations."  *Id.*  Importantly, in the insurance coverage context, the fifth, sixth, and eighth factors are "particularly relevant," to the extent applicable, based on the facts of a particular case.  *See Ewart v. State Farm Mutual Auto. Ins. Co.*, 257 F. Supp. 3d 722, 725 (E.D. Pa. 2017) (citing *State Auto Insurance Cos. v. Summy*, 234 F.3d 131, 134 (2000)).  In that connection, "[t]he fact that district courts are limited to predicting—rather than establishing— state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'"  *Reifer*, 751 F.3d at 148 (quoting *Summy*, 234 F.3d at 135).

10

Plaintiff contends that the third, fifth, and sixth factors weigh in favor of declining jurisdiction. Specifically, Plaintiff argues that this dispute solely involves questions of state insurance law and, further, that the "issues implicated are novel and undecided issues regarding the scope of coverage for COVID-19-related losses under 'all-risk' insurance policies." (Moving Br., at 11.) Moreover, Plaintiff maintains that the dispute is more efficiently resolved in state court because of the overlap of issues with the Jenkinson's Action.[6]

I turn first to the third *Reifer* factor—the public interest in settling the uncertainty of the obligation. 751 F.3d at 146. Generally, "there is no federal interest involved in [cases] concern[ing] purely questions of state law." *U.S. Liab. Ins. Co. v. Singer*, No. 16-887, 2016 WL 5858984, at *5 (D.N.J. Oct. 6, 2016) (alteration in original) (quoting *1100 Adams St. Condo Ass'n v. Mt. Hawley Ins. Co.*, No. 14-2203, 2014 WL 5285466, at *6 (D.N.J. Oct. 15, 2014)). Nevertheless, the Third Circuit has explained that absent "an unsettled question of state law or important policy issue implicated by" the claims in a matter, "there is little reason for a federal court to be reluctant about deciding [the] case." *Kelly*, 868 F.3d at 288 n.13. Here, Plaintiff contends that its claims raise novel questions of insurance coverage for COVID-19-related losses, namely "the scope of insurance coverage for COVID-19 losses under 'all risk' insurance policies." However, unlike other cases where courts have declined to exercise jurisdiction over COVID-19 related insurance coverage disputes, this matter does not involve unsettled questions of state law.[7]

---

[6]     Plaintiff further asserts that the equities favor remand because it could have included its excess carriers as defendants in the State Court action, which would have destroyed diversity of citizenship and foreclosed removal. Plaintiff argues that because it did not engage in such gamesmanship, it should not be penalized. However, Defendants were well within their rights to remove this action to Federal Court based on diversity jurisdiction. Accordingly, I decline to find that the equities favor remand.

[7]     Plaintiff relies on several cases from the Pennsylvania District Courts in support of its argument that this matter involves novel questions of state law that require remand. Those cases,

For example, in *Mark Daniel Hospitality, LLC v. AmGUARD Insurance Co.*, ___ F. Supp. 3d ___, 2020 WL 6111039 (D.N.J. Oct. 16, 2020), and *Mattdogg, Inc. v. Philadelphia Indemnity Insurance Co.*, No. 20-6889, 2020 WL 6111038 (D.N.J. Oct. 16, 2020), this Court declined to exercise jurisdiction over COVID-19-related insurance coverage actions that involved questions of whether virus exclusions were enforceable in the context of the COVID-19 pandemic.[8]  The question of whether such virus exclusions are enforceable implicates important issues of state public policy in an unsettled area of state law.  *See Mark Daniel Hospitality*, 2020 WL 6111039, at *5.  This case, however, does not involve a virus exclusion and, as such, the Court's concerns about predicting state public policy, as expressed in *Mark Daniel Hospitality* and *Mattdogg*, are not implicated.  Indeed, no such public policy argument is raised here.

Rather, resolution of this dispute involves a straightforward interpretation of the Policies' language.  In that regard, coverage here depends on whether there was "direct physical loss or damage" to the insured premises as a result of the Executive Orders requiring the closure of Plaintiff's business.  The question of what constitutes a "direct physical loss or damage" in the context of "loss of use" insurance claims under New Jersey law has been addressed by both the New Jersey state courts and the Third Circuit.  *See, e.g.*, *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) (finding coverage for "loss of use" in policy requiring

---

however, are inapposite here because they all involve application of a virus exclusion to COVID-19 related losses.  *See, e.g.*, *Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*, No. 20-1066, 2020 WL 5651598, at *4–5 (W.D. Pa. Sept. 23, 2020) *Dianoia's Eatery, LLC v*, 2020 WL 5051459, at *4; *Greg Prosmushkin, P.C.*, 479 F. Supp. 3d at 146.

[8]      Furthermore, since the issuance of *Mark Daniel Hospitality* and *Mattdogg*, the New Jersey State Courts have begun to rule on these matters, providing important guidance to federal courts.  *See, e.g.*, *Mattdogg, Inc. v. Phil. Indem. Ins. Co.*, No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law Div. Nov. 17, 2020); *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *9 (N.J. Super. Ct. Law Div. Nov. 5, 2020).

"physical loss or damage" requires that be property be rendered "unusable"); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 12-4418, 2014 WL 6675934, at *5 (D.N.J. Nov. 25, 2014); *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 406 N.J. Super. 524 (App. Div. 2009). The fact that these cases do not specifically address the factual circumstances presented by this case is of no moment as "[d]istrict courts are routinely called upon to interpret contracts under state law." *BCB Bancorp v. Progressive Cas. Ins. Co.*, No. 13-1261, 2014 WL 2434193, at *8 (D.N.J. May 28, 2014). Indeed, while state law insurance issues have "no special call on the federal forum," *Summy*, 234 F.3d at 136, "there is no strong state interest at stake where the issue before the Court is merely one of contractual interpretation." *BCB Bancorp*, 2014 WL 2434193, at *8. The issues presented by Plaintiff's claims are just that—questions of contract interpretation—that do not raise novel questions of state law.[9]

Next, I find that the fifth *Reifer* factor counsels against remand. The fifth factor suggests a general policy of restraint when the same issues are pending in state court. *Reifer* 751 F.3d at 146. While issues of insurance coverage for losses caused by the COVID-19 pandemic are currently pending throughout the State and Federal Courts, each of those actions concerns different policy terms and different underlying factors. The first *Reifer* factor—whether a judgment by this

---

[9]     Other federal courts have declined to remand COVID-19-related insurance coverage actions where the policy at issue did not contain a virus exclusion and required only straightforward application of insurance policy language to the facts. *See Equity Planning Corp. v. Westfield Ins. Co.*, 20-1204, 2020 WL 5909806, at *9 (N.D. Ohio Oct. 6, 2020) ("The Court acknowledges that the COVID-19 pandemic has given rise to new factual circumstances, but agrees with Westfield that adjudicating these claims 'will involve a straightforward application of clear and unambiguous insurance policy language to the facts—a task that Ohio federal courts are equipped to perform."); *Café Patachou at Clay Terrace, LLC v. Citizens Ins. Co. of Am.*, No. 20-1462, 2020 WL 4592718, at *4 (S.D. Ind. Aug. 11, 2020) (noting that factual circumstances of insurance coverage dispute, which did not involve a virus exclusion, were novel but that "[f]ederal courts regularly interpret [insurance contracts] under the laws of Indiana in a myriad of factual scenarios").

Court would completely resolve the "uncertainty of obligation" giving rise to the controversy—also weighs in favor of retaining jurisdiction. There is no dispute "that a declaration or judgment from this Court will have full force and ability to determine any and all obligations of the parties under the existing contracts." *See BCB Bancorp*, 2014 WL 2434193, at *5. Finally, the remaining *Reifer* factors are neutral. The second and fourth factors—the convenience of the parties and the availability of other remedies--are neutral because the forums are located in similar areas and can provide Plaintiff with its requested remedy. Further, the sixth and seventh factors are not implicated because, as discussed above, there are no parallel proceedings which present issues of duplicative litigation or *res* judicata concerns.[10]

Having scrutinized the *Reifer* factors, I will, in my discretion, exercise jurisdiction under the DJA over this matter.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's Motion to Remand is **DENIED**.

DATED:  April 8, 2021                            /s/ Freda L. Wolfson
                                                 Freda L. Wolfson
                                                 U.S. Chief District Judge

---

[10]      The eighth *Reifer* factor is not relevant here as there is no underlying action in which Defendants have a duty to defend Plaintiff.